CLOSED

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| HERSCHEL GOLD-PEGEISE | : | |
|  | : | |
| Plaintiff, | : | **OPINION** |
|  | : | |
| v. | : | Civ. No. 04-4303 (WHW) |
|  | : | |
| JO ANNE B. BARNHART, | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
|  | : | |
| Defendant. | : | |

**Walls, District Judge**

Plaintiff Herschel Gold-Pegeise appeals the denial of disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Title II and Title XVI of the Social Security Act by the Administrative Law Judge ("ALJ"). The Court affirms the ALJ's decision.

**BACKGROUND**

**A. Procedural History**

On August 2, 2000 the plaintiff filed an application for DIB and SSI. (Tr. 58-60). She alleged that she was disabled and unable to work beginning February 7, 2000. (Tr. 58) Her claim was denied initially on November 12, 2000, (Tr. 21-6), and upon reconsideration on April 25, 2001. (Tr. 29-31). The plaintiff requested a hearing which was held on September 13, 2002 before an ALJ. (Tr. 47-50, 462-89).

**CLOSED**

The plaintiff appeared at the hearing with counsel and gave testimony. On March 19, 2003, the ALJ issued an unfavorable ruling and denied the plaintiff's application. (Tr. 9-16). The plaintiff filed a request for appeals council review of the decision on April 1, 2003. (Tr. 8). The appeals council denied this request, and the decision of the ALJ became final on July 8, 2004. (Tr. 3-5).

**B. Statement of Facts**

**1. General History**

The plaintiff was born on July 1, 1962 (Tr. 58, 465), and is a high school graduate. (Tr. 84, 467). Her most recent job was as an inventory control clerk for a carpet manufacturer[a]. (Tr. 79, 151, 467-68). Her job consisted of using a computer to keep track of carpet inventory. This job did not require lifting, carrying, standing or walking, but did require sitting. (Tr. 468). Previously, the plaintiff had been the customer service manager for nine months at the New York Times in Publishers Circulation Fulfillment (Tr. 151, 468-69). No lifting or carrying was required, but the job did require sitting and standing. (Tr. 468-69). Plaintiff has not worked in any other job lasting at least a year. (Tr. 469). She currently resides in Tea Neck, New Jersey. (Tr. 17).

**2. Medical History**

In 1999, the plaintiff complained of abdominal pain and was referred to Dr. Barry Zingler for a gastrointestinal consultation. Dr. Zingler diagnosed possible pancreatitis and prescribed

---

[a] From December 1997 until February 7, 2000. (The day she became disabled).

2

**CLOSED**

medication. (Tr. 288). The plaintiff was hospitalized at Englewood Hospital and Medical Center ("Englewood") from February 7, 2000 until February 15, 2000 for abdominal pain. (Tr. 404-39). Dr. Mitchell K. Spinnell, a gastroenterologist, diagnosed chronic pancreatitis with acute exacerbation due to alcohol use.[b] (Tr. 412). Dr. William Jones, who had previously treated the plaintiff at Englewood, noted that he had previously diagnosed the plaintiff with pancreatitis and ordered her to abstain from alcohol.

Dr. Spinnell examined the plaintiff again on March 28, 2000. The plaintiff again complained of abdominal pains and Dr. Spinnell diagnosed her as "status post an episode of severe alcoholic pancreatitis." (Tr. 220).

The plaintiff was again hospitalized for abdominal pain at Englewood from September 6, 2000 until September 10, 2000. (Tr. 376). The plaintiff reported that she had abstained from drinking alcohol as directed, but had accidentally ingested nonalcoholic beer and cough syrup on the day of her admission. Id. She was discharged with a diagnosis of chronic alcoholic pancreatitis and ordered to continue her medications, including a new prescription nicotine patch. (Tr. 376-77). Dr. Isaiah Florence, who treated the plaintiff during this time, recommended that she seek counseling for substance abuse and follow up with Alcoholics Anonymous. (Tr. 388). Dr. Florence also put her on low-dose methadone to treat her pain. Id. The plaintiff continued to see Dr. Florence and in October 2000, he reported that the plaintiff was doing well on methadone and should continue attending meetings with Narcotics Anonymous. (Tr. 247)

---

[b] Plaintiff had reported drinking "two large glasses of straight vodka" prior to her acute symptoms. (Tr. 414).

**CLOSED**

In late October, 2000, Dr. Jones indicated to the Bergen County Board of Social Services that the plaintiff experienced continued prolonged pain and would be disabled for at least six months and was potentially "totally disabled." (Tr. 211). On November 1, 2000, Dr. Morris J. Feman, a state medical consultant, assessed the plaintiff's residual functional capacity ("RFC"). He found that when her condition was not acute, she could perform "light work" within the meaning of the RFC definition.[3] (Tr. 109-116). Dr. Barton Gillette, another state physician, affirmed this assessment in March 2001.

Dr. Sivadas examined the plaintiff in March 2001 and also determined that the plaintiff suffered from chronic alcoholic pancreatitis and also diagnosed hypertension and elevated blood pressure. (Tr. 223).

In July 2001, the plaintiff visited Englewood's emergency room with nausea and mild pain. She refused medical care and was not admitted. (Tr. 344). In August 2001, the plaintiff again visited Englewood with abdominal pain. (Tr. 250-281). The resident diagnosed pancreatitis and inadequate pain management. Upon discharge, Dr. Jones reported that she had been prescribed analgesics to manage her pain and was referred to a pain management service. (Tr. 251). The plaintiff was placed on a special diet and Dr. Jones gave her a "fair to guarded" prognosis.

In September 2002, in response to inquiries from her attorney, Dr. Jones indicated that the plaintiff had an extensive history of abdominal pain and opined that her "constellation of illnesses" precluded her from performing even light work because of the "likelihood of repeated episodes of unpredictable total disability." (Tr. 285).

---

[3] *See* 20 C.F.R. § 404.1567(b).

**CLOSED**

ANALYSIS

**A. Standard of Review**

This Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The district court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999) "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Metro Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). While substantial evidence must have real probative weight it "may be less than a preponderance." Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988) (citing Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988)).

"Despite the deference due to administrative decisions in disability benefit cases, 'appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). Cursory conclusions unsupported by evidence cannot justify an ALJ's decision. Id. "[A] reviewing court may remand a case to the Secretary for good cause, 'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.'" Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979) (quoting Saldana v. Weinberger, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)).

In determining if there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) objective medical facts; (2) diagnoses and expert

**CLOSED**

opinions of examining physicians; (3) subjective evidence of pain; and (4) the claimant's educational background, work history and age." Snee v. Sec'y of Health & Human Servs., 660 F. Supp 736, 738 (D.N.J. 1987). Accord Balock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972). In order for this Court to properly conduct judicial review and to avoid "judicial usurpation of administrative functions" it must ensure that the "administrative decision . . . [is] accompanied by a clear and satisfactory explanation of the basis on which it rests." Id. Otherwise, remand is appropriate. Cotter v. Roberts, 642 F.2d 700, 705 (3d Cir. 1981).

**B. Standard of the Commissioner's Determination of Disability**

Disability is defined by the Social Security Act as "inability to engage in any substantial gainful activity by any reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner must follow a five-step sequential process to determine if an applicant is disabled and eligible for Social Security disability benefits. 20 C.F.R. § 404.1520. The Commissioner must first determine whether or not the claimant is currently engaged in "substantial gainful activity." Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). "Substantial gainful activity" is defined as "the performance of significant physical or mental duties . . . for remuneration or profit." Chicager v. Califano, 574 F.2d 161, 163 (3d Cir. 1978).

Second, if the claimant is not engaged in "substantial gainful activity" then the ALJ must next determine if the claimant is suffering from a severe impairment. Plummer, 186 F.3d at 428. A severe impairment is defined as "any impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities."

**CLOSED**

Barnhart v. Thomas, 124 S. Ct. 376, 379 (2003); 20 C.F.R. §§ 404.1520(c), 416.920(c).

If the claimant's impairments are severe, the ALJ must make a third determination that they are listed in Appendix 1 to subpart P of the regulations or are equivalent to those impairments listed. Plummer, 186 F.3d at 428; 20 C.F.R. § 404.1520. If the impairments are not listed nor equivalent to those listed in the appendix, then the ALJ must make a fourth finding regarding the claimant's "residual functional capacity to perform" his or her "past relevant work." Id. "Residual functional capacity is defined as what a claimant can still do despite his limitations." Burns, 312 F.3d at 119.

If the ALJ holds that the claimant cannot return to his or her "past relevant work" due to the impairments, then the ALJ must determine if there are "other jobs existing in significant numbers in the national economy which the claimant can perform," taking into account his or her educational and work experiences. Plummer, 186 F.3d at 428.

**C. Analysis**

The plaintiff seeks DIB and SSI benefits for an alleged disability due to symptoms arising out of chronic pancreatitis. The ALJ engaged in the five-step analysis and found that the plaintiff met the requirements at each stage and ultimately concluded that her "occupational base for sustained work activities has been so eroded that there are no jobs which exist in significant numbers that he remains able to perform. Therefore, the Administrative Law Judge concludes the plaintiff has been disabled since February 7, 2000, as alleged." (Tr. 14). Neither side disputes the determination that the plaintiff is disabled under the five-step test. However, the ALJ ultimately determined that the plaintiff could not be considered disabled because alcoholism

**CLOSED**

was a contributing factor material to her determination of disability pursuant to 42 U.S.C. § 423(d)(2)(C) *amended by* Pub. L. 108-203 (March 2, 2004).

The process by which the Social Security Administration ("SSA") determines whether alcoholism is, in fact, a contributing factor material to the determination of disability is codified in 20 C.F.R. § 404.1535 and 416.935. The SSA must first (1) find that the plaintiff is disabled, and (2) have medical evidence of alcoholism. 20 C.F.R. § 404.1535(a), 416.935(a). Once the ALJ has determined that the plaintiff is disabled and that there is medical evidence of alcoholism, he must then determine if the plaintiff would still be disabled if she stopped using alcohol. 20 C.F.R. § 404.1535(b)(1), 416.935(b)(1). If the ALJ determines that the plaintiff would still be disabled if she stopped using alcohol, she will be considered disabled under the Act. If the ALJ determines that the plaintiff would not continue to be disabled if she stopped using alcohol, she is ineligible for SSI and DIB. Id.

The plaintiff makes two basic arguments supporting the contention that the ALJ erroneously applied this statute and ensuing regulations: (1) She was not abusing alcohol at the time of her claim, precluding application of the statute, (Pl's Br. at 17) and (2) her alcohol abuse is not material to the finding of disability because "her underlying medical condition will persist regardless of her consumption of alcohol." Id.

**1. There is substantial evidence that the plaintiff has an alcohol problem.**

The plaintiff contends the ALJ did not rely on substantial evidence that that the plaintiff continued to abuse alcohol. If, as the plaintiff contends, she was not abusing alcohol at the time of her claim, she could not be considered an "alcoholic" within the meaning of 42 U.S.C. §

**CLOSED**

423(d)(2)(C), and the statute would no longer apply to her. 20 C.F.R. § 404.1535(a) and 416.935(a) require that the ALJ must have medical evidence of alcoholism before considering a determination pursuant to 42 U.S.C. § 423(d)(2)(C).

It is uncontested that the plaintiff was at one time an alcoholic and an admitted drug user (Tr. 467). The question is whether the ALJ relied on substantial medical of alcoholism when he did his 42 U.S.C. § 423(d)(2)(C) analysis. The ALJ cites the following medical evidence in making his determination that the plaintiff is an alcoholic:

(1) The plaintiff was admitted to the hospital on February 7, 2000. Dr. William Jones, attending physician that day, reported that the plaintiff had been "previously diagnosed with pancreatitis and treated with alcohol abstinence, up until recently when she resumed drinking moderately." (Tr. 189).

(2) The ALJ also cites Dr. Mitchell K. Spinnel's March 28, 2000 report, in which Dr. Spinnel described the plaintiff's condition as "status post an episode of severe alcoholic pancreatitis." (Tr. 220). The record is replete with such references. (Tr. 193, 412, 417, 418.)

(3) The ALJ notes that at her hearing, the plaintiff admits that she was once an alcoholic and a drug user and still drinks "once in a blue moon." She never denies being an alcoholic, but says that she "cut down." (Tr. 466-67).

(4) The Commissioner points out that in September 2000, Dr. Isaiah Florence recommended that the plaintiff be referred to substance abuse counseling and "follow up with Alcoholics Anonymous. (Tr. 388).

The plaintiff's medical history of alcoholism and her own admission that she continues to

**CLOSED**

drink support the ALJ's view of the medical evidence. Considered together this combination of evidence is legally sufficient to constitute medical evidence of alcoholism. Mittelstedt v. Apfel, 204 F.3d 847 (8th Cir. 2000). The Eighth Circuit recently ruled that the plaintiff's testimony that she "still drinks occasionally" can be used to support medical evidence of alcoholism and constitute substantial evidence. Id. at 852. The ALJ correctly relied on this evidence and determined that there was sufficient medical evidence of alcoholism to progress to the next stage of determination as mandated by 42 U.S.C. § 423(d)(2)(C), 20 C.F.R. § 404.1535(a) and 416.935(a).

**2. The plaintiff's alcohol abuse was material to the finding of disability.**

The key factor in determining the materiality of alcohol abuse to a finding of disability is whether the plaintiff would still be found disabled if she stopped using alcohol. 20 C.F.R. § 404.1535(b)(1), 416.935(b)(1). The plaintiff contends that even if she were to quit drinking, her disability would still prevent her from doing her past relevant work or any work existing in large numbers in the national economy. The ALJ determined that the plaintiff would be able to perform light work if she were to quit drinking in accordance with her doctor's orders. This decision was based on substantial evidence and the Court affirms.

As the plaintiff readily admits, the majority of chronic pancreatitis cases are secondary to alcoholism. (Pl's Br. at 16). She contends, however, that while "abstinence from alcohol will reduce the number and severity of episodic inflammations and slow the loss of pancreatic function, it will not reverse the damage already done to the pancreas." Id. The plaintiff argues that the ALJ misunderstood or ignored this allegation. The record shows that the ALJ did not

**CLOSED**

ignore this allegation, but addressed it and found that there was substantial evidence to refute the claim.

Dr. Spinnell consistently reported that the plaintiff's pancreatitis was alcoholic in nature and did not appear to have a "structural cause." (Tr. 220, 417). Dr. Jones instructed the plaintiff to avoid alcohol in hopes that this would avoid exacerbation of the problem. (Tr. 189). When the plaintiff was hospitalized in February 2000, Dr. Zingler diagnosed acute exacerbation of the plaintiff's pancreatitis that he suspected was related to alcohol abuse. The ALJ acknowledges the plaintiff's continuing pain, but asserts that the December 2001 and February 2002 physician's reports from Dr. Florence constitute substantial evidence that the plaintiff can still perform light work. (Tr. 14, 306). Dr. Feman's report also suggests the plaintiff has the residual functional capacity to perform light work. (Tr. 110)

Moreover, both the Fifth and Eight Circuits have held that it is the plaintiff who bears the burden of proving that alcohol addiction is not a contributing factor material to disability determination. Mittelstedt, 204 F.3d at 852. The plaintiff's brief is replete with references to medical dictionaries and journals, but does not cite the opinion of any treating or consulting physician to bolster the assertion that the plaintiff would still be disabled if she were to stop drinking. The plaintiff's most compelling piece of evidence, her treating doctor's letter of September 12, 2002, asserts that she cannot engage in even light work activity because of a likelihood of "repeated episodes of unpredictable total disability." (Tr. 285). This report, which is cited by the ALJ, makes no reference to what the plaintiff's "total disability" would be if she were to quit drinking and comply with her doctor's instructions. As such, the plaintiff has failed to meet her burden to prove that alcoholism is not material to the determination of her disability.

**CLOSED**

The plaintiff further contends that the ALJ misapplied the RFC determination guidelines when he determined that the plaintiff could perform light work. In his initial determination, the ALJ found that "in view of her diminished functional ability," the plaintiff did not retain the RFC to perform her past relevant work. (Tr. 14). This determination was based on the plaintiff's conditions as they existed with alcoholism as a contributing factor. Since alcohol has been determined to be a contributing factor, the plaintiff must repeat the analysis by asserting what her RFC would be if she were to quit drinking. 20 C.F.R. § 404.1535(b)(1), 416.935(b)(1). Under Plummer, the plaintiff bears the burden of proof that she cannot perform her past relevant work. Plummer, 186 F.3d at 422. Although the plaintiff submits evidence of her RFC, such evidence is based on assessments of her RFC including her alcoholism. The plaintiff fails to submit substantial evidence of what her RFC would be if she were to quit drinking. Since the medical record is substantially complete, the ALJ's decision is based on substantial evidence and should be affirmed.

**CONCLUSION**

The ALJ relied on substantial evidence that the plaintiff is an alcoholic and that her alcoholism was material to the determination of her disability. Accordingly, the Court affirms the ALJ's determination.

**s/ William H. Walls, U.S.D.J.**